UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| JENNIFER COX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:10-cv-00156-SEB-WGH |
| vs. | ) | |
| | ) | |
| THE EVANSVILLE POLICE | ) | |
| DEPARTMENT and THE CITY OF | ) | |
| EVANSVILLE, | ) | |
| Defendants. | ) | |

**ENTRY ON PENDING MOTION**

This cause is before the Court on the Motion for Summary Judgment [Docket No.

43], filed on December 27, 2011 by the Evansville Police Department and the City of

Evansville ("Defendants"), pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure. On October 27, 2010, Plaintiff, Jennifer Cox, filed suit pursuant to 42 U.S.C.

§ 1983 to redress Defendants' alleged infringements of her rights to liberty and privacy,

which are safeguarded by the Due Process Clause of the Fourteenth Amendment to the

United States Constitution. Ms. Cox has also asserted several supplemental tort claims

against Defendants based on the principle of *respondeat superior*. On January 23, 2012,

pursuant to Federal Rule of Civil Procedure 41(a)(2), Ms. Cox filed a motion for

voluntary dismissal of three claims contained in the Complaint [Docket No. 47], which

the Court granted in an order dated January 25, 2012 [Docket No. 52]. For the reasons

detailed below, we decline to rule on Defendants' Motion for Summary Judgment.

Additionally, we DISMISS this action WITHOUT PREJUDICE.

## **Factual Background**

On or about March 1, 2009,[1] Ms. Cox was at the home of Deborah Jackson at 3900 North Fulton Avenue in Evansville, Indiana.  Defs.' Br. at 5.  Both women had been drinking alcohol, and Ms. Cox estimated that she had consumed approximately "half of a fifth of brandy."  Defs.' Ex. 1 at 305-06.  At some point during the night, the two women got into an argument during which Ms. Cox "hit [Ms. Jackson] a couple of times."  *Id.* at 338.  Ms. Jackson subsequently called the police to report the incident.  *Id.*

The Evansville Police Department ("EPD") typically dispatches two police officers to respond to reports like Ms. Jackson's because of the possibility of violence. Defs.' Br. at 5.  In some circumstances, one officer will radio dispatch the second officer if he or she arrives at the scene first and the second officer is not needed.[2]  Here, EPD Officer Martin Montgomery[3] was dispatched in response to Ms. Jackson's call around 4:02 a.m.; he was presumably aware that the situation involved an altercation between two women.  *Id.*  He called Officer Kathy Winters, the second dispatched police officer for this incident, approximately two minutes later to tell her she need not respond.  *See id.*

---

[1]Because many events at issue in this case allegedly occurred after midnight, it is not entirely clear whether the proper date is March 1.

[2]It is rare, however, for an officer to be told to disregard a call before the first officer arrives at the scene. *See* Defs.' Br. at 5.

[3]Officer Montgomery, one of the original defendants in this action, was dismissed from the lawsuit in the Court's entry dated January 6, 2012 [Docket No. 52].

When Officer Montgomery arrived at the scene, Ms. Jackson gave him Ms. Cox's car keys and asked him to drive Ms. Cox home, which he agreed to do. Defs.' Ex. 1 at 343.

At approximately 4:22 a.m., Officer Montgomery indicated to EPD's central dispatch that he was transporting a female in his car. Defs.' Ex. 1 at 360. He drove Ms. Cox to her apartment complex, and the EPD's call log reflects that he reported arriving at Ms. Cox's residence at 4:26 a.m. *Id.* at 360-61. The call log further reflects that at 4:28 a.m., Officer Montgomery indicated that he was available to make another dispatch run. *Id.* at 361, 401.

On direct examination in a state court proceeding, Ms. Cox stated that Officer Montgomery followed her into her apartment after driving her home. Defs.' Ex. 1 at 310, 324. She testified that she did not prevent him from coming inside because she "thought at the time he was just being an [o]fficer, making sure [she] got in alright [sic] knowing [she] was drinking that night." *Id.* at 310. Once in the apartment, Officer Montgomery asked Ms. Cox to perform oral sex on him and continued asking in spite of her refusal. *Id.*; Defs.' Br. at 6. Ms. Cox testified that she was afraid he would "do something more" to her if she continued to rebuff him. Defs.' Ex. 1 at 311. Regrettably, her suspicions were true; Officer Montgomery put his hands on Ms. Cox's shoulders, pushed her down, and coerced her to perform oral sex. *Id.* at 312. After a few moments, he dragged her by the arm to her bedroom and performed various sexual acts on Ms. Cox on her bed. *Id.* at 313-15, 331. Officer Montgomery subsequently got dressed and left the apartment without saying anything else to Ms. Cox. *Id.* at 315-16.

Following the incident with Officer Montgomery, Ms. Cox did not file a report with the EPD because she was ashamed and assumed that the police would not believe her. Defs.' Ex. 1 at 316-18; Defs.' Br. at 7. Officer Montgomery returned to her apartment about a week later, however, and asked her, "Are you interested still?" Ms. Cox said no, shut and locked her door, and did not see Officer Montgomery again. Defs.' Br. at 7.

On June 16, 2009, after receiving a complaint from Brittany Pryor, the EPD opened a criminal investigation regarding the alleged misconduct of Officer Montgomery. EPD Chief Brad Hill ("Hill") Aff. ¶ 9. The EPD immediately placed Officer Montgomery on administrative leave because of Ms. Pryor's complaint. *Id.* Then, on June 18, 2009, Officer Montgomery waived his rights and gave a statement to EPD Detective Greg Fleck in which he admitted to having sex with "an unidentified woman who lived at 3900 N. Fulton." *Id.* ¶ 10. EPD Chief Brad Hill suspended Officer Montgomery the very next day; the suspension was without pay, for twenty-one days, and carried Chief Hill's recommendation to the Evansville Police Merit Commission that Officer Montgomery be terminated. *Id.* ¶¶ 11, 18. On July 23, 2009, EPD investigators identified Ms. Cox as the woman from Officer Montgomery's statement. A department detective interviewed Ms. Cox the following day about the incident. *Id.* ¶¶ 12-13.

Before hiring a person as a police officer, the EPD subjects the candidate to an extensive background investigation, a polygraph examination (during which the examiner inquires as to any prior acts of sexual misconduct), and the State of Indiana's prescribed

psychological evaluation.  Hill Aff. ¶ 4.  Officer Montgomery passed the pre-employment

screening and evaluation process and was hired as a probationary police officer on

February 27, 2006.  *Id.* ¶ 5.  He successfully completed the police academy and field

training programs and received "above average" performance ratings during his

probationary year.  *Id.*  Until the EPD's abovementioned 2009 investigation, Officer

Montgomery's work record was nearly unblemished.  Between September 7, 2006 and

November 5, 2008, he received numerous positive work evaluations, letters of

appreciation, and awards.  *Id.* ¶ 8.

The rules, regulations, and policies of the EPD have been promulgated for all EPD

officers to promote the organization's mission: "to uphold and obey the law, support and

defend the constitutions of the United States of America and the State of Indiana, and

serve and protect the citizens of Evansville."  Hill Aff. ¶ 17.  To that end, Chief Hill has

asserted that throughout his thirty-year tenure with the EPD, he has not been aware of any

EPD officer being charged with or convicted of a sexual crime against a citizen.  Defs.'

Br. at 11.  Nevertheless, on July 29, 2009, Officer Montgomery was charged in *State of

Indiana v. Martin Montgomery*, No. 82C01-0907-FB-00859, in the Vanderburgh Circuit

Court, with two counts of criminal deviate conduct.  Hill Aff. ¶ 14; Defs.' Ex. 1 at 7, 11.

Officer Montgomery resigned from the EPD on August 3, 2009.  Hill Aff. ¶ 15.  He was

found guilty in a trial by jury on July 27, 2010 and was sentenced on August 23, 2010 to

serve twelve years at the Indiana Department of Correction.  Defs.' Ex. 1 at 477.

**Procedural Background**

On October 27, 2010, Ms. Cox filed a complaint in this court asserting several claims arising out of the incident with Officer Montgomery: Count I (alleging a violation of 42 U.S.C. § 1983 to redress constitutional injuries resulting from the EPD's policy of negligent hiring and improper training of its police officers), Count II (negligence), Count III (false arrest), and Count IV (battery). *See generally* Compl. On December 27, 2011, the EPD and the City of Evansville moved for summary judgment on all counts asserted in the Complaint. The Court's dismissal of Counts I, III, and IV divested the instant lawsuit of one of the original defendants, Officer Montgomery, as well as the sole claim arising out of the laws of the United States. The only remaining claim in the action is Count II, alleging negligence on the part of the remaining defendants based on the principle of *respondeat superior*.

## Legal Analysis

As a preliminary matter, we note that summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. After drawing all reasonable inferences from the facts in favor of

the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 323.

Notwithstanding the existence of well-pled facts, we have determined that it would be improvident for us to rule on Defendants' Motion for Summary Judgment relating to this sole remaining state law issue. The federal supplemental jurisdiction statute, 28 U.S.C.§ 1367, "allows federal courts to decide state-law claims that are outside . . . federal diversity jurisdiction if they are so closely related to the plaintiff's federal-law claims as to be in effect part of the same case." *Williams Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 905 (7th Cir. 2007). Once all federal claims have been dismissed and the only remaining claims deal with issues of state law, the district court "may decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c)(3). In the Seventh Circuit, "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

When deciding whether it is appropriate to exercise jurisdiction over a pendent state law claim, the Court must "consider and weigh the factors of judicial economy, convenience, fairness and comity." *Sellars v. City of Gary*, 453 F.3d 848, 852 (7th Cir. 2006). Here, however, the remaining supplemental state law claim involves a somewhat

unsettled issue of Indiana law: whether the doctrine of *respondeat superior* applies when an on-duty police officer sexually assaults an Indiana resident after driving her home. The Seventh Circuit has explicitly stated that "[i]f the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Wright*, 29 F.3d at 1251. We are therefore mindful of our obligation to scrupulously monitor the boundaries of our jurisdiction. *See Tellis v. Sipes*, No. 4:12-cv-0007-SEB-WGH, 2012 WL 1969054, at *2 (S.D. Ind. May 31, 2012).

In the case at bar, it is unclear whether the remaining claim has substantive merit. Under the doctrine of *respondeat superior*, employers are liable "for the wrongful acts of his employee which are committed within the scope of employment." *Stropes v. Heritage House Childrens Ctr.*, 547 N.E.2d 244, 247 (Ind. 1989). *Stropes* is the seminal Indiana case on *respondeat superior* liability in the context of unauthorized acts that occur during the course of an employee's duties. In *Stropes*, a fourteen-year-old disabled child was sexually assaulted by his caretaker while the caretaker was changing the boy's bed sheets. *Id.* at 245. The Indiana Supreme Court held that "[t]he fact that this was a sexual assault [was] not *per se* determinative of the scope of employment question," but rather, that "the focus must be on how the employment relate[d] to the context in which the commission of the wrongful act arose." *Id.* at 249. Decisions in Indiana since *Stropes* have had disparate outcomes but have largely focused on whether the employee had any authorized physical contact with the victim. *Compare Hansen v. Bd. of Trs.*, 551 F.3d 599 (7th Cir. 2008) (applying Indiana law and finding no liability where school band director engaged

8

in a sexual relationship with student), *and Barnett v. Clark*, 889 N.E.2d 281 (Ind. 2008) (no liability where board of trustee sexually assaulted an employee in an office), *with Southport Little League v. Vaughn*, 734 N.E.2d 261 (Ind. Ct. App. 2000) (liability imposed when equipment manager sexually molested children in a baseball program). Bearing in mind this guiding precedent, we find that the matter before us is no longer one suitable for resolution in federal court.

Further, although we acknowledge Defendants' argument that retaining jurisdiction would prevent delay and promote judicial economy, we find such issues secondary to our previously stated concerns.

### Conclusion

For the reasons explicated above, the Court now withholds a ruling on Defendants' Motion for Summary Judgment and DISMISSES this action WITHOUT PREJUDICE. Pursuant to Indiana Code § 34-11-8-1, the parties are authorized to re-file the lawsuit in state court notwithstanding any statutes of limitation, which have been stayed or tolled during the pendency of this case on our docket.

IT IS SO ORDERED.

Date: _____06/18/2012_____


_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:


David L. Jones
JONES WALLACE, LLC
djones@joneswallace.com

W. Scott Montross
MONTROSS MILLER MULLER MENDELSON & KENNEDY, LLP
smontross@4mklaw.com

Robert W. Rock
JONES WALLACE LLC
rrock@joneswallace.com